■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ALICE CRIMMINS, Appellant.— Appeal by defendant from (1) a judgment of the Supreme Court, Queens County, rendered May 13, 1971, convicting her of murder in the first degree and manslaughter in the first degree, upon a jury verdict, and sentencing her to life imprisonment for the murder and to a prison term of 5 to 20 years for the manslaughter, the sentences to run concurrently; and (2) an order of the same court, dated July 28, 1972, which denied her motion for a new trial on the grounds of newly discovered evidence and improper conduct by the prosecutor in withholding from her information potentially helpful to her defense. Judgment reversed as to the murder count, on the law and the facts, and that count dismissed, on the law; and judgment reversed as to the manslaughter count and new trial granted as to that count, on the law; and appeal from the order dismissed as moot. With respect to the count charging the murder of defendant's son, we believe the corpus delicti was not established, since, as a matter of law, the People did not prove, beyond a reasonable doubt, that his death resulted from a criminal act (*People* v. *Deacons*, 109 N. Y. 374; *People* v. *Cuozzo*, 292 N. Y. 85; *People* v. *Rooks*, 40 Misc 2d 359; see, also, *People* v. *Cleague*, 22 N Y 2d 363, 365–366). Hence, that count of the indictment must be dismissed. As to that count, if we were not dismissing, we would reverse and grant a new trial (1) because the jury verdict was contrary to the weight of the evidence with respect to whether the death resulted from a criminal act and (2) for the reasons hereinafter stated for the reversal and grant of a new trial on the manslaughter count. With respect to the manslaughter count, we believe defendant was deprived of a fair trial and is entitled to a new one because of the following errors and improprieties: (1) It was prejudicial error to permit the prosecutor to adduce testimony from Rorech, an important prosecution witness, that he had been given a sodium pentothal [truth serum] test (cf. *People* v. *Neumuller*, 29 A D 2d 886). (2) It was prejudicial error to permit the prosecutor to disclose, through his cross-examination of defense witness Colabella, that Colabella had refused to sign a waiver of immunity when questioned by the prosecutor during the pretrial investigation of the case, since, under the circumstances of this trial, Colabella's refusal to sign such waiver may well have been considered by the jury as an indication of defendant's guilt (cf. *People* v. *Ashby*, 8 N Y 2d 238; *United States* v. *Sing Kee*, 250 F. 2d 236, cert. den., 355 U. S. 954). (3) It was improper for the prosecutor to put before the jury, in his questioning of defense witness Colabella, an alleged damaging admission by him to one Sullivan (whom Colabella denied knowing and which admission he denied making) and then fail to call Sullivan as a witness or explain the failure to call him; this impropriety was aggravated when (a) the prosecutor strenuously opposed a subsequent defense request for a charge that the jury could draw an unfavorable inference from the People's failure to call Sullivan as a witness and (b) the court refused to so charge; and, in the context of this trial, it is immaterial

that defense counsel did not object when these questions were put to Colabella, since defense counsel had every right to then believe that the prosecutor was merely laying a foundation for subsequent impeaching testimony by Sullivan. (4) It was grossly improper and prejudicial for the prosecutor to say, in his summation, that defendant " doesn't have the courage to stand up and tell the whole world she killed her daughter ", as that was tantamount to an improper assertion by the prosecutor that he knew defendant was guilty and, in addition, was an improper attack on her refusal to testify. In view of the foregoing disposition of the appeal from the judgment, the appeal from the order denying a new trial is moot and for that reason is dismissed. However, we may note that if we were not reversing the judgment we would reverse the order denying the motion for a new trial and would remand that motion to the trial court for a plenary hearing. Rabin, P. J., and Martuscello, J., concur; Hopkins, J., concurs, except that he dissents from the statement favoring reversal of the order denying the motion for a new trial were the judgment not being reversed. Munder and Christ, JJ., concur in the reversal of the judgment as to the murder count and in the dismissal of that count, and the dismissal of the appeal from the order denying the motion for a new trial, but only insofar as the order relates to the murder count, and otherwise dissent and vote to affirm the judgment as to the manslaughter count and to affirm the order insofar as it relates to that count.