[No. 7113-4-II. Division Two. September 17, 1985.]

THE STATE OF WASHINGTON, *Appellant*, v. MARY EMMA BRYCE, ET AL, *Respondents.*

---

*Henry R. Dunn, Prosecuting Attorney,* and *Robin M. Force, Deputy,* for appellant.

*Ellsworth I. Connelly* and *Herrmann, Levenson, Margullis & Ray,* for respondents.

ALEXANDER, J.—The State appeals the trial court's dismissal of an information charging Mary E. Bryce and Wolfe W. Bryce with a violation of the welfare fraud statute, RCW 74.08.331. The basic issue is whether the State may be permitted to amend its information to set forth an amount of public assistance allegedly unlawfully obtained, to bring the charge within the applicable statute of limitations. We agree with the trial court that amendment was not proper in this case and, accordingly, affirm.

On November 30, 1982, the Bryces were charged with "welfare fraud" under RCW 74.08.331[1] arising from events

---

[1]RCW 74.08.331 provides in pertinent part:

"Any person who by means of a wilfully false statement, or representation, or impersonation, or a wilful failure to reveal any material fact, condition or circumstance affecting eligibility of need for assistance, including medical care, surplus commodities and food stamps, as required by law, or a wilful failure to promptly notify the county office in writing as required by law or any change in status in respect to resources, or income, or need, or family composition, money contribution and other support, from whatever source derived, or any other change in circumstances affecting his eligibility or need for assistance, or other fraudulent device, obtains, or attempts to obtain, or aids or abets any person to obtain any public assistance to which he is not entitled or greater public assistance than that to which he is justly entitled shall be guilty of grand larceny . . ."

The reference to "grand larceny" in RCW 74.08.331 was impliedly repealed and replaced with the term "theft" by RCW 9A.56.100. *State v. Sass,* 94 Wn.2d 721, 620 P.2d 79 (1980).

occurring between November 30 and December 31, 1979. The information recited verbatim the language of RCW 74.08.331 without identifying any amount of public assistance allegedly unlawfully obtained.[2] In April 1983, the Bryces moved to dismiss the information, on constitutional grounds and under RCW 10.40.110, for failure to state a crime because the information did not allege the amount of assistance unlawfully obtained. In the alternative, they contended that if the information stated a crime, the action was barred by the 2-year statute of limitations applicable to gross misdemeanor thefts. RCW 9A.04.080.

In response to the Bryces' motion to dismiss, the State, at the hearing on the motion, orally sought to amend its information to allege an amount over $250, a felony under the theft statute. The statute of limitations for felony theft is 3 years. RCW 9A.04.080. The trial court dismissed the information, finding, under alternative grounds, that amendment was not proper. The trial court concluded that the information either failed to state a crime or even if it stated a crime, it stated gross misdemeanor theft, which was barred from prosecution by the statute of limitations and not subject to amendment. We need address only the latter ground for dismissal to resolve this appeal.

The State concedes that the statute of limitations had run on a gross misdemeanor charge at the time of filing the

---

[2]The information stated:

"Comes now Henry R. Dunn, Prosecuting Attorney of Cowlitz County, State of Washington, and by this information accuses the above-named defendants of violating the criminal laws of the State of Washington as follows: The defendants, in the County of Cowlitz, State of Washington, between November 30, 1979, and December 31, 1979, by means of a wilful false statement or a wilful failure to reveal any material fact, condition or circumstances affecting eligibility of need for assistance, including medical care, surplus commodities and food stamps, as required by law, or a wilful failure to promptly notify the county officer in writing as required by law, of any change in status in respect of resources, income or any other change in circumstances affecting their eligibility of need for assistance, or other fraudulent device, did obtain or attempt to obtain public assistance to which they were not entitled, or greater public assistance than that to which they were justly entitled, contrary to RCW 74.08.331, and against the peace and dignity of the State of Washington."

information. However, it contends that the information, stated in the language of RCW 74.08.331, charged a felony within the limitations period; the amendment merely made this more definite. Characterizing a violation of RCW 74.08.331 as a crime of "welfare fraud," the State contends that since RCW 74.08.331 does not contain any reference to a dollar amount, the amount of overpayment is not an element of the offense necessary to a conviction. The State further asserts that *State v. Sass*, 94 Wn.2d 721, 620 P.2d 79 (1980) indicates only that the penalty portion of RCW 74.08.331 was repealed, thereby making the amount of the assistance unlawfully obtained relevant, after conviction, in order to determine the appropriate penalty and sentence commensurate with the theft provisions. The State maintains that *Sass* did not incorporate the dollar amounts applicable under the theft statute as an element of "welfare fraud." Thus, the State reasons that omission of the amount of overpayment merely renders the information vague subject to amendment, in the absence of any prejudice shown by the Bryces. We do not agree.

We recognize the apparent confusion brought about by the enactment of RCW 9A.56.100 and the Legislature's failure to expressly amend RCW 74.08.331. However, we do not read *State v. Sass, supra,* as supporting the State's contentions. The State's characterization of a violation of RCW 74.08.331 as a "crime of welfare fraud" is misplaced. It obscures the effect brought about by RCW 9A.56.100. *Sass* held that RCW 9A.56.100 abolished the crime of grand larceny, identified in RCW 74.08.331, and substituted instead the crime of *theft. Sass* further held that the classification system employed under the theft statutes, RCW 9A.56, which defines the crime, based on the amount wrongfully obtained, is incorporated into and applies to the welfare fraud statute.[3] *Sass,* 94 Wn.2d at 724.

---

[3]The amount unlawfully obtained is an element of theft by statutory definition, RCW 9A.56 provides in relevant part:

"9A.56.030 Theft in the first degree. (1) A person is guilty of theft in the first

■ RCW 9A.56.100, therefore, significantly altered the nature and scope of RCW 74.08.331. *Sass,* contrary to the State's assertions, did not merely determine that the penalty portion of RCW 74.08.331 was repealed by implication. *Sass* established, as discussed, that the very nature of the offense was altered. A violation of RCW 74.08.331 now constitutes a particular degree of theft, depending upon the amount of overpayment wrongfully received. *State v. Sass, supra; see also State v. Wallace,* 97 Wn.2d 846, 849, 651 P.2d 201 (1982). In turn, the identity of the degree of the offense under the theft statutes dictates the appropriate penalty. *Sass* accordingly also recognized that the penalty portion of RCW 74.08.331 was repealed by implication.

Thus, the language of RCW 74.08.331 does not completely define all of the elements of the offense. It merely states one element—the methods in which this particular type of theft regarding public assistance entitlement can be committed. The second element of this theft crime is the amount of overpayment of public assistance. *State v. Sass, supra; State v. Brisebois,* 39 Wn. App. 156, 161, 692 P.2d 842 (1984). This element is essential. It identifies the offense and must be charged.

■ Because the amount of overpayment of public assistance is an element of this theft crime, we agree with the trial court that since the information did not allege any amount unlawfully obtained, it stated only theft in the third degree, a gross misdemeanor (*see Mooney v. Craner,*

---

degree if he commits theft of:

"(a) Property or services which exceed(s) one thousand five hundred dollars in value; or

"(b) Property of any value taken from the person of another.

" . . .

"9A.56.040 Theft in the second degree. (1) A person is guilty of theft in the second degree if he commits theft of:

"(a) Property or services which exceed(s) two hundred and fifty dollars in value, but does not exceed one thousand five hundred dollars in value; . . ."

" . . .

"9A.56.050 Theft in the third degree. (1) A person is guilty of theft in the third degree if he commits theft of property or services which does not exceed two hundred and fifty dollars in value."

38 Wn.2d 881, 233 P.2d 850 (1951); *Sorenson v. Smith,* 34 Wn.2d 659, 209 P.2d 479 (1949)), prosecution of which was barred because the applicable 2–year limitation period had run before filing of the original information. The amended information charging a felony also was beyond the applicable 3–year limitation period for felony theft. The trial court denied the State's motion to amend, finding that it lacked subject matter jurisdiction over the original information, and that the second information, which attempted to broaden the original charges, was improper. This reasoning is consistent with our holding in *State v. Glover,* 25 Wn. App. 58, 604 P.2d 1015 (1979).[4]

 In *Glover,* as here, the State attempted to file an amendment, which itself was beyond the statute of limitations, to an original information which also charged a crime beyond the limitations period. In addition, the amendment sought, as here, to broaden the charges from a gross misdemeanor to a felony. To save the amendment from dismissal, the State argued that it should "relate back" to the date of filing of the original information. We disagreed, holding that an original information which is not timely filed is not subject to amendment. We reasoned that because a criminal statute of limitation is jurisdictional, an information which charges a crime beyond the statute of limitations is void on its face, and therefore, there is nothing to which an amendment can relate back. *Glover,* 25 Wn. App. at 61; *see also State v. Eppens,* 30 Wn. App. 119, 123, 633 P.2d 92 (1981).

The instant case falls squarely within *State v. Glover, supra.* The State cannot rely on the relation back doctrine

---

[4]We are aware that recently Division One in *State v. Fischer,* 40 Wn. App. 506, 699 P.2d 249 (1985) attempted to distinguish our holding in *Glover,* allowing the State under the relation back doctrine to file an untimely amendment to an original information which itself was filed beyond the applicable statute of limitations. While we agree that *Fischer* is factually distinguishable from *Glover* (since *Fischer* did not involve an attempt to broaden the charges), we do not agree that the language in *Glover* can be easily dismissed as mere dicta. *Fischer,* 40 Wn. App. at 512 n.1.

to save an untimely amendment where the original information charged a crime beyond the statute of limitations. The trial court properly denied the State's motion to amend.

We affirm the order of dismissal.

PETRICH, J., concurs.

REED, A.C.J. (dissenting)—I dissent. In my view *State v. Sass,* 94 Wn.2d 721, 670 P.2d 79 (1980) was wrongly decided and, in any event, has been given an inappropriately expansive reading by the majority.

RCW 74.08.331 defines the crime of welfare fraud and provides that one violating its provisions "shall be guilty of grand larceny and upon conviction thereof shall be punished by imprisonment in the state penitentiary for not more than fifteen years." In *Sass,* after carefully stating at page 722 that "[t]he sole question is what is the appropriate penalty," the court held that the Washington Criminal Code of 1976 (RCW Title 9A) repealed "by implication the portion of [RCW 74.08.331] establishing the welfare fraud penalty" and substituted in its stead the penalties of first, second or third degree theft, depending on the monetary amount involved. *State v. Sass,* 94 Wn.2d at 726.

Welfare fraud was deemed in *Sass* to be a particular degree of theft because (1) the criminal code applies to offenses "defined in this title or the general statutes, unless otherwise expressly provided . . ." RCW 9A.04.010(2), (2) the code requires that "larcenies outside of this title . . . be treated as thefts as provided in this title", RCW 9A.56.100, and (3) the "rule of lenity" prevents an increase in a penalty absent clear evidence such was intended by the Legislature. I submit this rationale is incorrect.

The criminal code expressly does not apply to crimes defined outside its provisions, if "the context otherwise requires". RCW 9A.04.010(2). Because the "context" of the welfare fraud statute requires otherwise, one does not even reach the code's *later* direction (RCW 9A.56.100) that lar-

cenies be "treated as thefts". In my view, the Supreme Court completely ignored this prefatory proviso that limited the operation of the act so as to clearly exclude welfare fraud.

To begin with, welfare fraud is not a "particular degree of theft," (majority opinion, at 806) because the two crimes are committed in different ways—the elements are *not* the same, *see State v. Holmes,* 98 Wn.2d 590, 597, 657 P.2d 770 (1983), and evidence that could sustain one charge would not necessarily suffice for the other. *See State v. Olds,* 39 Wn.2d 258, 260, 235 P.2d 165 (1951).

Further, in RCW 74.08.331, the Legislature specifically provided that "attempts" at welfare fraud carry the same penalty as completed frauds. Strict application of *Sass,* however, would preclude the imposition of a penalty for an attempt because the particular amount involved cannot be determined until the Department of Social and Health Services *actually awards* the assistance. *Cf. State v. Holmes,* 98 Wn.2d at 599–600. RCW 9A.28.020(3). It should be noted that "public assistance" may take the form of "medical care, surplus commodities and food stamps," items which hardly lend themselves to being valued in terms of dollars, if *Sass* in fact requires such specificity.

Even if the criminal code (RCW Title 9A) applies to welfare fraud, as held in *Sass,* the fact that all larcenies outside the criminal code must be "treated as thefts as provided" within the code does not mean that all larcenies would be punishable according to the monetary amount involved. *See* RCW 9A.56.100. Such a syllogism might be persuasive if *all* "thefts as provided in this title" were punishable under such a classification system. They are not, however. For instance, theft of livestock is a type of theft "provided in this title" that is punishable as a class B felony *regardless of the amounts involved.* RCW 9A.56.080. *Cf. State v. Washing,* 36 Wash. 485, 491, 78 P. 1019 (1904) (prosecution for felony theft of livestock under former Ball. Code § 7113). Rather, because welfare fraud was intended

to be a felony equivalent to the highest degree of larceny,[5] *see* former RCW 9.01.020, it properly would be "treated" as a theft by imposing the felony punishment equivalent to the highest degree of theft.[6] *State v. Sass,* 24 Wn. App. 289, 291–92, 600 P.2d 688 (1979).

In any event, although the doctrine of stare decisis may require us to follow *Sass,* we need not, as the majority has done, extend that precedent. *Sass* did not hold that the amount of assistance involved was an *element* of welfare fraud, but only that the criminal code had repealed "by implication *the portion* of [RCW 74.08.331] establishing the welfare fraud *penalty* . . ." *State v. Sass,* 94 Wn.2d at 726. (Italics mine.) If, as the majority here states, the elements of other theft crimes were "incorporated" into RCW 74.08.331, the Supreme Court would not have held in a case after *Sass* that "the welfare fraud statute does not include the intent to deprive element present in RCW 9A.56 thefts." *State v. Holmes,* 98 Wn.2d at 597. Indeed, unlike theft in the first, second and third degrees, welfare fraud does not include a designated amount as an integral part of its definition of the crime. *Compare* RCW 74.08.331 *with* RCW 9A.56.030–.050. Like the presumptive sentencing act, *Sass* simply states that a particular factor determines the punishment to be imposed. In neither case does it follow that such a factor becomes ipso facto an element of the underlying crime. Hence, the information against the

---

[5]Because the predecessor to RCW 74.08.331 "failed to specify the type of larceny involved" and "[s]ome prosecutors were reluctant to charge recipients when the conviction could only result in a gross misdemeanor," the Legislature intended to "leave no doubt that [the new welfare fraud statute] changes the crime to grand larceny. . . ." Letter to Governor Daniel Evans from Walt Howe (Mar. 30, 1965) (regarding H.B. 264) Wash. State Archives.

[6]That this was and apparently continues to be the legislative intent is obvious from its passage of the Sentencing Reform Act of 1981, wherein it provided that "welfare fraud" would be punished at the same seriousness level (II) as "theft in the first degree" and "theft of livestock." *See* RCW 9.94A.320. If *Sass* is correct in holding that the Legislature repealed the penalty portion of the welfare fraud statute, it is now evident that the Legislature's passage of the sentencing act repealed those changes found by *Sass.*

Bryces includes all the elements necessary to charge the felony crime of welfare fraud and should not have been dismissed on that ground.

Nor do I agree that the original information was filed in violation of the statute of limitations for misdemeanors, thus depriving the court of jurisdiction. Welfare fraud is a *felony* regardless of the amount involved. A statute is not taken out of the felony classification simply because it countenances a misdemeanor punishment,[7] *State v. Harvey,* 57 Wn.2d 295, 301, 356 P.2d 726 (1960); *Olsen v. Delmore,* 48 Wn.2d 545, 547–48, 295 P.2d 324 (1956). As I have demonstrated, it is clear that welfare fraud was intended to be a felony. Accordingly, the statute of limitations for misdemeanors is inapplicable and the information was timely filed to charge a felony.

Finally, I must dissent on an additional ground. Assuming arguendo that welfare fraud is *not always* a felony, and that the amount involved is an element that must be pleaded, the State should have been allowed to amend its information to set forth the amount and clarify the charge, absent some showing that the defendant's substantial rights would have been prejudiced. CrR 2.1(d); *State v. Fischer,* 40 Wn. App. 506, 699 P.2d 249 (1985); *State v. Koch,* 38 Wn. App. 457, 685 P.2d 656 (1984).

In *State v. Glover,* 25 Wn. App. 58, 604 P.2d 1015 (1979), we held that an information *clearly* intending to charge what could be only a misdemeanor (former RCW 9.79-.080(1)) could not be amended to charge a felony (former RCW 9.79.080(2)) where the misdemeanor statute of limitations had run *before* the initial charge was filed. The original Bryce information did not clearly charge what can be only a misdemeanor; accordingly the State's attempt to amend was not an attempt to broaden impermissibly the

---

[7]Indeed, even the felonies of "theft in the first degree" and "theft of livestock" may be punished with misdemeanor sentences (county jail time) under the presumptive sentencing act. *See* RCW 9.94A.310; RCW 9.94A.320.

original charge.[8]

Rather, assuming the information lacked an essential element (amount) of "theft by welfare fraud," and was therefore defective, *i.e.,* if unamended would not have supported a felony conviction *had one been obtained, see Mooney v. Cranor,* 38 Wn.2d 881, 233 P.2d 850 (1951), the State's request to amend should have been granted. Bryces could not have been misled as to how they had violated the law, *i.e.,* improperly obtained or attempted to obtain, by one of the several means charged in the original information, welfare benefits to which they were not entitled. They can demonstrate absolutely no prejudice. *See State v. Gosser,* 33 Wn. App. 428, 656 P.2d 514 (1982). Accordingly, the Bryce information was timely filed. Unlike *Glover,* the court obtained jurisdiction of the subject matter and parties. The corrective amendment should have been allowed, and then would have "related back" to the initial filing. CR 15(c); *State v. Fischer, supra.*

To avoid an unreasonable extension of *Sass* and *Glover* I would reverse and permit an amendment of the information.

---

[8]As noted in *State v. Fischer,* 40 Wn. App. 506, 699 P.2d 249 (1985), our opinion in *Glover* was not intended to preclude an amendment of an information (*e.g.* change of date) to bring it within the applicable statute of limitations for the crime originally intended to be charged.